JOHN G. CHAMBERS, Adm'r of JOHN BRIGMAN, deceased, v. MADISON GREENWOOD.

On the trial of an action upon a note due an intestate, his administrator was introduced and asked what his intestate said about the note before his death—question ruled out. Defendant's counsel argued to the jury, that if the intestate were alive, he would be willing to leave the decision of the case with him, &c. In reply the plaintiff's counsel had a right to comment before the jury upon the objection of the defendant to the introduction of the declarations of the intestate.

The non-introduction of a settlement, in which it is relied that a note, the subject of the action was brought into account and satisfied, is a proper circumstance for comment before the jury, on the trial for the recovery of the note.

(*Devries & Co.*, v. *Phillips & Haywood*, 63 N. C. Rep. 53; *Peebles* v. *Horton*, 64 N. C. Rep. 374, cited and approved.)

DEBT, under our former practice, tried before *Henry, J.*, at the Fall Term, 1872, of BUNCOMBE Superior Court.

The plaintiff, at Spring Term, 1867, of the Superior Court of Law for Buncombe county, sued the defendant on a note alleged to be due his intestate, at which term the defendant plead payment and satisfaction. In support of his plea, he introduced one Whitmore, who testified, that he went with the defendant to the house of Brigman, the plaintiff's intestate, in the Spring of 1860, when both parties consented to go into a settlement. Witness went off to a neighbors to get some whiskey and when he returned, Brigman and defendant were in the porch surrounded by papers, and he heard the former remark, that he could not find the note, that it was for about $90; and at the same time he, Brigman, asked him, the witness, to take notice that it was settled, and that the defendant and his wife would come over to his house next Thursday night, and in the meantime he would hunt up the note and give it up. It was further in evidence on the part of the defendant, that Brigman, the plaintiff's intestate, had borrowed money from defendant in the Fall of 1860, after the alleged settlement and gave his note for

$150, saying at the time nothing about the $90 note.   That plaintiff's intestate, in a conversation with witness, a short time before his death remarked that he wanted the $150 paid defendant out of the first moneys raised from his estate, saying nothing at this time about the $90 note.

The plaintiff himself was introduced, and was asked what he heard his intestate say about the note.   Question objected to, and the Court did not permit the witness to answer it.   The plaintiff testified that for a month before the death of his intestate, he was constantly with him, that his physician would allow no one to speak to him on business, and that he died in 1861.   That he, the plaintiff, before he had taken out letters of adminstration, had had with the defendant a conversation, it being at the time understood however, that he would administer, in which the defendant said, he thought that his debt of $150 ought to be promptly paid out of the first moneys; that there were other matters between them, but that he could arrange them in some other way.   That this time plaintiff knew nothing of the $90 note.

Other evidence was introduced, irrelevant to the points decided, and need not be stated.   The objections to the remarks of opposing counsel, and the ruling of his Honor on the trial below thereon, are stated at length in the opinion of the Court.

The jury returned a verdict for the plaintiff for the amount of the note and interest.   Motion for a new trial; motion overruled.   Judgment for amount of verdict and for costs.   Appeal by the defendant.

*J. H. Merrimon,* for appellant.
*Jones & Jones,* contra.

READE, J.   1. The action is upon a note payable to the intestate of plaintiff, which note the defendant alleged was

embraced in a settlement of accounts between him and the plaintiff's intestate, in his lifetime, and that, in that way the note had been settled, and was not delivered up because it was mislaid, and it was to be delivered up when found. The plaintiff had offered to prove what his intestate had said about the note, and defendant's counsel objected, and the evidence was ruled out. In the argument, the defendant's counsel said to the jury, that if the intestate were alive there would be no difficulty about it; and that he would be willing to leave it to him. In reply, the plaintiff's counsel said, well, if that is so, why did you object to my proving what he said? And thereupon, the defendant's counsel asked his Honor to stop the plaintiff's counsel, because he was commenting on evidence which had been ruled out. No, said his Honor, he is not commenting on the testimony which was ruled out, but he is commenting on your argument. The defendant's counsel had gone outside of the case, to say what he would be willing to do, and the plaintiff's counsel went outside of the case, to test his sincerity. It may have been a hard hit, but in the opinion of his Honor it was fair. And as it spent its force upon the *counsel* and not upon the case, it is not a ground for a new trial. It was but the repartee common in debate, which the Judge could hardly prevent, and which in his discretion he might indulge.

2. In commenting on the alleged settlement, the plaintiff's counsel asked in argument, why the settlement, the papers, claims and evidences of debt were not produced to speak for themselves, instead of relying upon the memory of the witnesses; and why the defendant did not explain, either by himself or his wife, both of whom were competent witnesses. The defendant's counsel objected to this course of argument, and asked the Court to stop the plaintiff's counsel, which his Honor declined to do. And the defendant excepted, upon the ground that the counsel had no right to comment

upon the non-introduction of the defendant or his wife as a witness.

It will be observed that the non-introduction of the defendant and his wife was not the point which the counsel was making before the jury, but it was the non-introduction of the settlement and the papers and evidences of claims, and that the fact of the non-introduction of the papers, unexplained, tended to show that no such papers ever existed. And that if there was any explanation why the papers were not produced, it was for the defendant to make it, and this he had failed to do, although both himself and his wife were competent witnesses.

The authority upon which the defendant relies to support this exception, is *Devries & Co.* v. *Phillips* and *Haywood*, 63 N. C. Rep. 53. In that case it was alleged that the conveyance under which the defendant, Haywood, claimed the property was fraudulent. And the defendant Haywood, did not offer himself as a witness to prove that it was not fraudulent, choosing to rely upon other testimony. And thereupon the plaintiff insisted that his Honor should charge the jury, " that as the facts of the case were peculiarly within his own knowledge, the circumstance that he did not tender himself as a witness, in his own behalf, required them to presume the facts as to which he might have testified most strongly against him." His Honor refused the charge, and this Court sustained him. In the opinion, it is said, " that the fact that a party does or does not offer himself as a witness, *standing alone*, allows the jury to presume nothing for or against him, and can only be the subject of comment as to its propriety or necessity, in any given case according to the circumstances, as the introduction or non-introduction of any other witness might be commented on." And it is further said, "that it is a rule of evidence that where facts are proved against a party which, it is apparent, he might explain, and he withholds the ex-

planation, the facts are to be taken most strongly against him; so the misconduct of a party in suppressing or destroy-ing evidence, which he ought to produce, or to which the other party is entitled ; such as the spoliation of papers and the like, warrants unfavorable presumptions against him." Apply these principles to the case before us, and the case cited would seem to be against the defendant ; for the point made here is, that the papers of the settlement and the evi-dences of indebtedness, which the defendant set up, ought to be produced by him, or their non-production accounted for ; and that it did not lay in him to say that he could not account for them, because he was himself a competent wit-ness. It is further laid down in the case cited that the .naked fact that a party does not offer himself as a witness is not a fair subject of comment by counsel, and that the Court ought to restrain it. We thought then, and still think, the rule wisè and necessary. The proper administration of jus-tice and the rights of suitors require it. The evil would arise in every case, as in every case there must be parties. And if every party is to be assailed because of the naked fact that he offers himself as a witness, or because of the naked fact that he does not offer himself as a witness, every trial will be a nuisance. It would be the same as to allow every party to be assailed just because he is a party. And instead of citizens regarding the Courts as the palladiums of their rights and liberties, they would come to regard them as the slaughter houses of their reputations. But still, it must be understood that if a party choses to put himself under suspicious circumstances, as in the particulars named in *Devries* and *Haywood, supra,* or, as in *Peebles* v. *Horton* 64 N. C. Rep. 374, where the defendant claimed under a deed, alleged to be fraudulent against creditors, and introduced himself as a witness to prove the deed fair, instead of intro-ducing the maker of the deed, who in that case was disin-terested and necessarily knew all about the matter, and was

present in Court; this was held to be a "suspicious circumstance," and a fair subject of comment by counsel.

It is proper that we should say that the mere manner of conducting the trial below is, and ought to be, so much within the discretion of the presiding Judge, that an alleged irregularity must be palpable, and the consequences important, to induce us to interfere.

There is no error.

PER CURIAM.                          Judgment affirmed.